UNITED STATES of America, Appellee,

v.

Theodore Thomas CURTIS, Appellant.

UNITED STATES of America, Appellee,

v.

Dale Peter CORDOVA, Appellant.

UNITED STATES of America, Appellee,

v.

Kevin Andrew CURTIS, Appellant.

UNITED STATES of America, Appellee,

v.

John Phillip DULIN, Appellant.

Nos. 77–2070, 77–2071, 77–2235 and 77–2107.

United States Court of Appeals, Ninth Circuit.

Oct. 12, 1977.

Robert J. Hooker, Kent D. Morgan, Tucson, Ariz., for appellants.

Dale A. Danneman, Asst. U. S. Atty., Tucson, Ariz., U. S. Atty., Phoenix, Ariz., for appellees.

Before ELY and CARTER, Circuit Judges, and ENRIGHT, District Judge.*

ELY, Circuit Judge:

The four appellants were charged and convicted of having possessed a quantity of marijuana with the intent to distribute the same, a violation of 21 U.S.C. § 841(a)(1). Other charges in the original indictment, conspiracy to import marijuana and unlawful importation of marijuana, had been dismissed, pursuant to stipulation, prior to the nonjury trial. The appellants present four principal contentions:

(1) That the installation of a so-called transponder in a Piper Navajo aircraft, and the introduction of evidence derived from the use of the transponder, constituted an infringement of the appellants' Fourth Amendment rights.

(2) That arresting officers did not have probable cause to stop and search a vehicle being driven by the appellant Kevin Curtis.

(3) That a confession made by the appellant Dulin was involuntary.

(4) That the prosecution's evidence was insufficient to support the convictions of the appellants Thomas Curtis, Cordova, and Dulin.

We pass an extended discussion in respect to the claim of inadequate evidence. If Dulin's confession was voluntary, there obviously was sufficient evidence to convict him. And if the evidence derived from the transponder and the marijuana revealed by the search were properly received, the evidence, considered as a whole and viewed in the light most favorable to the Government, was adequate to support the convictions of Cordova and Theodore Curtis.

■ As to the appellants' argument in respect to Dulin's confession, the argument has no merit. The trial judge made the determination that Dulin's confession was voluntary, and that finding must be upheld unless it can be said that the finding is clearly erroneous. *United States v. Cluchette*, 465 F.2d 749, 754 (9th Cir. 1972). The investigating officers twice gave Dulin the required warnings before Dulin made his admissions. Dulin argues that he was in fact promised, or thought he was promised, leniency in return for the admission. The record belies this contention. Dulin was not offered leniency. He was told only that it would be made known to responsible authorities that he had cooperated. Furthermore, Dulin admitted that he realized at the time he made his admissions that no promise was being made to him. A simple representation to a cooperating confessor that the fact of his cooperation will be made known to prosecuting authorities is insufficient to render a confession involuntary. *United States v. Glasgow*, 451 F.2d 557, 558 (9th Cir. 1971). The court's finding that Dulin's confession was voluntary is fully supported.

While it is probably unnecessary, we briefly review the circumstances surrounding the installation of the transponder. The appellant Theodore Curtis (hereinafter Theodore) was an experienced aviator. ORCO Aviation, whose general manager at Riverside, California was one Joe Pagan, owned a Piper Navajo airplane. Theodore had rented the plane from October 4th to October 15th, 1976. When the aircraft was returned on the 15th of October, Pagan suspected that the plane had been used to transport marijuana. His suspicion was based on the following: (1) There were apparent discrepancies between the supposed itinerary of the aircraft and the receipts for the fuel that had been consumed; (2) some of the seats in the plane had been removed and improperly replaced; (3) one of the cabinet doors of the aircraft had been damaged; (4) there was vegetable debris in the plane that Pagan thought was marijuana; (5) the aircraft's propellers bore evidence that the plane had been landed on at least

---

* Honorable William B. Enright, United States District Judge, Southern District of California, sitting by designation.

an unimproved airstrip. On October 26, 1976 Theodore arranged with Pagan to rent the aircraft again. The period of rental was to be ten days, beginning on November 3, 1976, and Theodore deposited $300 to secure the arrangement. On November 1st, two days before this rental period was to commence, Pagan informed agents of the United States Customs Service of his suspicions. At the same time, he arranged for the installation by Customs officials of the transponder, an electronic tracking device, in the aircraft. The installation was made on the following day, November 2d, without prior judicial approval, while the plane still remained in the possession and control of Pagan, who, as has been noted, was the agent and general manager of the aircraft's owner. After Theodore took possession of the plane on November 3d, and during the period from that date to November 10th, various trackings of the aircraft's flights were made and recorded with the use of the transponder. The plane was tracked to the Litchfield Airport in Litchfield, Arizona, some ten to fifteen miles outside the City of Phoenix, where Theodore and Cordova were observed with the plane. The ship was also tracked to Phoenix, and in the early hours of November 10th, the transponder's signals indicated that the plane was headed in the direction of the Mexican border. The signals from the transponder were lost when the plane was approximately forty miles north of the border, but at 2:40 a. m. on November 10th, signals reappeared indicating that the plane was returning in a northerly direction. In the evening of November 10th, at 9:20 p. m., signals reappeared as the plane proceeded toward the Mexican border. The signals were lost at the same place as before, but at 12:45 a. m. on November 11th, the signals reappeared and disclosed that the aircraft was heading northerly, away from Mexico. The signals were tracked to the vicinity of Wenden, Arizona, and then lost. A Customs aircraft was dispatched for the purpose of intercepting the Piper Navajo, but the officials were unable to locate the Piper. The officers then proceeded in their aircraft to an abandoned airstrip about thirty miles from Wen-

den. The Customs plane was equipped with an infrared surveillance device, and at approximately 1 a. m., the Customs agents, with the use of this device, detected an airplane with the configuration of a Piper Navajo. The detected plane was parked on an abandoned airstrip. After this plane had been sighted, the Customs officers observed two land vehicles of normal size approach the parked airplane and remain for a period of five or ten minutes. The officers observed that neither the parked aircraft nor the land vehicles on the abandoned strip displayed any lights, and when the plane under observation took to the air at about 1:10 a. m., it did not utilize its running lights. The Customs officers, in their plane, briefly pursued the departing plane and then returned to observe the ground vehicles. These two vehicles remained parked for a moment and then proceeded toward an interstate highway. They traveled about one mile to the on-ramp of the highway before their headlights were turned on. The Customs airplane followed both of the vehicles until the latter separated, at which time the plane followed what the operators were then able to identify visually as a truck with a camper shell. The airborne agents contacted ground facilities and arranged that this truck be intercepted. Other agents, observed by officers in the Customs aircraft, intercepted the truck, which was being operated by Kevin Curtis (hereinafter Kevin). Kevin was taken into custody. The officers searched the truck and found therein approximately 400 pounds of marijuana. The contraband was seized, and, over objection, eventually received as prosecution evidence.

The appellants vigorously complain that their Fourth Amendment guarantees were infringed by reason of the installation of the transponder and the introduction of evidence derived from its use. Their arguments bear considerable weight, having been adopted by the Fifth Circuit sitting en banc in *United States v. Holmes*, 537 F.2d 227 (5th Cir. 1976), *affirming* 521 F.2d 859 (5th Cir. 1975). Our Circuit, however, has adopted an approach contrary to

that taken in *Holmes. United States v. Pretzinger*, 542 F.2d 517 (9th Cir. 1976); *United States v. Hufford*, 539 F.2d 32 (9th Cir.), *cert. denied*, 429 U.S. 1002, 97 S.Ct. 533, 50 L.Ed.2d 614 (1976). *Pretzinger*, as does the case at hand, involved the installation of a transponder in an airplane suspected of being used for the smuggling of marijuana and the tracking of the plane to its rendezvous with two trucks. The facts in *Pretzinger* cannot logically be distinguished from those before us now, and the legal conclusions reached in *Pretzinger*, as well as in *Hufford*, are controlling precedents that compel the rejection of the appellants' Fourth Amendment claims in respect to the installation and use of the tracking device.[1]

The three judges here concerned wish to make it clear that in this age of ever-advancing sophistication in the development of electronic eavesdropping devices, they are not insensitive to unjustifiable intrusions on the right of privacy, a right that is deemed to be most precious to the American people. Law enforcement agencies should not have carte blanche power to conduct indiscriminate surveillance for unlimited periods of time of varying numbers of individuals. Our conclusion as to the propriety of the installation and use of the transponder in this case is predicated upon the peculiar facts and circumstances as a whole, particularly that here the officers, prior to the installation, had been given reliable information, based on articulable facts, that the plane was being utilized in the pursuit of criminal activity by a specific, identifiable individual. Absent these considerations, and in the ordinary case, we are inclined to the view that secret surveillance devices in vehicles should be installed pursuant to court order, as in *Hufford*, under such reasonable time limitations and other restrictions as the court should, in the circumstances, reasonably impose.[2]

█ Finally, we hold that there was adequate probable cause for the search of the camper truck being operated by Kevin and the seizure of the contraband that he was then transporting. *See, United States v. Coplen*, 541 F.2d 211, 215 (9th Cir. 1976), *cert. denied*, 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed.2d 791 (1977), and *United States v. Young*, 535 F.2d 484, 487–88 (9th Cir.), *cert. denied*, 429 U.S. 999, 97 S.Ct. 525, 50 L.Ed.2d 609 (1976). *Cf., United States v. Patterson*, 492 F.2d 995, 997 (9th Cir.), *cert. denied*, 419 U.S. 846, 95 S.Ct. 82, 42 L.Ed.2d 75 (1974).

The judgments of conviction are

AFFIRMED.

---

1. The appellants have argued that Pagan had no authority to grant to the officers permission to install the transponder. They base this argument upon the fact that the agreement for the rental of the plane had been made prior to the transponder's installation. We reject the argument. The installation occurred before the time for the commencement of the rental period. The owner of the plane had full control and dominion over it at the time, and it seems logical to us that the owner, through its agent, had the right at that time to install within its airplane any instrument that would not be physically dangerous to occupants of the plane.

2. The author of this opinion joins his Brothers in resolving the questions relating to the transponder, but he does so only because he cannot logically distinguish *Hufford* and *Pretzinger* and thus believes that he had no choice save to abide by the decisions in those cases. If free to do otherwise, he would follow *United States v. Holmes*, 521 F.2d 859 (9th Cir. 1975), *aff'd en banc*, 537 F.2d 227 (9th Cir. 1976). *See also, United States v. Bobisink*, 415 F.Supp. 1334 (D.Mass.1976). Writing in this footnote for himself only, he expresses his opinion that the reasoning of *Holmes* is more logical and precise than that set forth by our court in *Hufford* and *Pretzinger*.