STATE OF NEBRASKA, APPELLANT, V. DONALD ERKS,
APPELLEE.

333 N.W.2d 776

Filed May 6, 1983. No. 83-200.

Randy R. Stoll, Seward County Attorney, for appellant.

Brian C. Bennett of Dunlap & Bennett, for appellee.

BOSLAUGH, J.

The State has appealed under Neb. Rev. Stat. § 29-824 (Cum. Supp. 1982) from an order of the District Court of Seward County, Nebraska, suppressing statements made by the defendant Erks to the Seward chief of police.

An information filed December 9, 1982, alleged that Erks, a person more than 19 years of age, had subjected a person of less than 16 years of age to sexual penetration. Erks then moved to suppress statements he had made in an interview with the chief of police on November 28, 1982. Following an

evidentiary hearing the motion was sustained. The only issue on this appeal is whether it was error for the District Court to conclude that the State did not demonstrate that defendant's statements were given freely, voluntarily, knowingly, and intelligently, and to order the statements suppressed.

The record shows that on November 28, 1982, Erks reported to the Seward police that he had been assaulted by his son-in-law, Michael Walker. While investigating that complaint, the police received information from Walker's wife which indicated that Erks had sexually abused his 5-year-old granddaughter. Later that day, when Erks called the police station to check on the progress made on his complaint, Officer Sherman informed him that another matter had come up involving Erks and the granddaughter. Sherman asked Erks to come to the police station to discuss the matter on a voluntary basis.

Erks went to the police station and, following a 20- to 30-minute wait, was taken to the office of the chief of police, Kenneth Zike. Both Sherman and Zike were present. Erks was then given the *Miranda* warnings. The interview, which lasted from 5:15 p.m. to 5:40 p.m., with one break, was taped. During the interview Erks admitted that he had committed the crime with which he is charged.

At the suppression hearing Erks raised several issues with regard to the voluntariness of the statement. The District Court did not state the grounds upon which it based its order to suppress. In determining whether a statement was made voluntarily, the totality of the circumstances must be examined. *State v. Smith*, 203 Neb. 64, 277 N.W.2d 441 (1979). Some factors to be considered in making the determination are age, intelligence, education, background, the atmosphere in which the interrogation took place, the demeanor of the interrogation, physical treatment, prior history with the police, and the presence or absence of warnings. *Wilson v.*

*Sigler*, 333 F. Supp. 594 (D. Neb. 1971), *aff'd* 449 F.2d 1352 (8th Cir. 1971); *State v. Shaffer*, 96 Wis. 2d 531, 292 N.W.2d 370 (1980).

Erks testified that he had been assaulted on the day of the interrogation, had taken aspirin, prescription pain medication, and cold medication, and was "dizzy." The officers testified that defendant appeared coherent, although nervous and upset. A physical condition of the defendant which makes him incapable of understanding the meaning of his statements renders a statement involuntary. See *State v. Lamb*, 213 Neb. 498, 330 N.W.2d 462 (1983). The record does not reflect that Erks was in such a condition. See, e.g., *People v. Pawlicke*, 62 Ill. App. 3d 791, 379 N.E.2d 798 (1978) (statements by defendant who had ingested drugs, consumed alcohol, and was emotionally upset were not involuntary).

At the start of the interview Erks was given the *Miranda* warnings, and on several occasions throughout the interview stated that he would speak to the police without the presence of an attorney. However, after his initial waiver Erks requested the presence of the county attorney. It was explained to him that this was not possible. Erks continued to talk with police, again indicated his willingness to talk to police without an attorney, and requested counsel only when preparation of a written statement was discussed. The interview was then immediately terminated. It can not be concluded from the record that the request for the county attorney was one for the assistance of counsel. Under these circumstances, Erks waived his right to counsel freely, knowingly, and voluntarily. See, *State v. Keesecker*, 198 Neb. 426, 253 N.W.2d 169 (1977); *State v. Weinacht*, 203 Neb. 124, 277 N.W.2d 567 (1979).

Early in the interview Erks was told: "Is there anything at all to this? . . . I am giving you a chance now because later I'm going to have to testify in Court whether you cooperated or you didn't." Such a statement regarding the cooperation of the defend-

ant is not by itself an inducement such that it would render a confession involuntary. *State v. Muenchau and Brown*, 209 Neb. 552, 308 N.W.2d 824 (1981); *United States v. Curtis*, 562 F.2d 1153 (9th Cir. 1977), *cert. denied* 439 U.S. 910, 99 S. Ct. 279, 58 L. Ed. 2d 256 (1978).

During the interrogation Erks was led to believe the police had a statement from an eyewitness to the crime. In fact, they had no such statement. Deception by police is not sufficient to make an otherwise valid confession inadmissible, unless it is such as to produce a false or unworthy confession. *State v. Stevenson & Jackson*, 200 Neb. 624, 264 N.W.2d 848 (1978). Erks had previously made a confession consistent with the one made following the deception. The deception does not appear to have induced a false confession.

Midway through the interview the police told Erks: "We don't get a dollar more or a dollar less sending you to jail or not, ok? If you need help, Don, my recommendation is let's get you some help." Later, Erks was told: "If we can save embarrassment for the rest of the family, we're going to do it. That's why we got you in first. Normally we go to the people who have made the accusation and get statements from them. We take the victim, the child in and have the Doctor examine and [sic] them all out. We're doing it just reversed trying to save you some embarrassment and to save them some embarrassment. So that's why I'm giving you the opportunity, Don, to tell me the truth."

An interrogation tactic in which the police appear to befriend the defendant and are "on his side" does not in itself render a confession involuntary. See, *White v. State*, ____ Ind. App. ____, 404 N.E.2d 1144 (1980); *State v. Miller*, 76 N.J. 392, 388 A.2d 218 (1978). However, a confession must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influ-

ence. *State v. Smith*, 203 Neb. 64, 277 N.W.2d 441 (1979); *State v. Teater*, 209 Neb. 127, 306 N.W.2d 596 (1981). In the present case, Erks, accused of a crime of a sexual nature, could easily have been influenced to confess by indications that the police who sought to get help for him would also protect him and his family from embarrassment. The trier of fact could find that confessions made in response to these inducements were not made voluntarily. Factfindings by the trial court will not be overturned unless clearly wrong. *State v. Lamb*, 213 Neb. 498, 330 N.W.2d 462 (1983); *State v. Teater, supra*.

The statements made by the defendant Erks prior to the time the inducements were made are admissible. The record shows that Erks had waived his rights voluntarily, was capable of making a rational statement from his free will, and was not prompted by threat or inducement. The duration of the interview was short. Erks was not in a coercive atmosphere. He had had prior experience with the police and had spent time in jail for other offenses. The order suppressing those statements was erroneous. Accordingly, that part of the statement is admissible.

However, the District Court was not clearly wrong in finding that the statements made subsequent to the inducements were not made voluntarily. That portion of the statement is ordered suppressed upon trial of this matter.

The judgment is affirmed in part, and in part reversed.

AFFIRMED IN PART, AND IN PART REVERSED.