STATE OF NEBRASKA, APPELLEE, V. CAROLYN A. JOY, APPELLANT.
353 N.W.2d 23

Filed August 10, 1984. No. 83-924.

Donald W. Kleine, for appellant.

Paul L. Douglas, Attorney General, and Timothy E. Divis, for appellee.

Krivosha, C.J., Boslaugh, White, Hastings, Shanahan, and Grant, JJ., and Brodkey, J., Retired.

White, J.

The defendant, Carolyn A. Joy, was charged with first degree murder, convicted by a jury, and sentenced to imprisonment for the remainder of her life.

The sole assignment of error on appeal to this court is that the district court erred in refusing to suppress the statement or confession given by the defendant to Douglas County sheriff's officers. We agree with the defendant's position, and, as a consequence, we are compelled to reverse her conviction and sentence.

A recitation of the facts surrounding the confession is necessary. On June 8, 1983, members of the sheriff's department questioned Joy concerning the recent homicide of Laura J. LaPointe. Joy denied any involvement. On June 28, 1983, the defendant was in custody at the Douglas County Department of Corrections for a prostitution charge. On that day, at approximately 9 a.m., Joy was transported to the sheriff's office at 115th and Burt Streets to obtain a hair sample, undergo a polygraph test, and continue the June 8 interview. Joy told the deputy sheriffs that she had spoken with her attorney and that her attorney advised her not to say anything unless her attorney was present. After the hair sample was taken Joy was placed in an interrogation room "to continue the interview." The deputy sheriffs, on their own initiative and not at the defendant's request, attempted to contact the attorney whom the defendant said represented her. Around 11:15 that morning, the attorney returned the deputy sheriffs' telephone call and notified them that she was not Joy's attorney and did not intend to represent Joy. Joy was informed of this information, but she was not given an opportunity to talk to the attorney, nor was she allowed the option of calling the attorney or any other attorney. Joy was asked to continue the interview. Although Deputy Sheriff Robert J. Tramp testified that Joy agreed to talk to him at that time, it is undisputed that Joy refused to sign the standard rights advisory form. The questioning continued.

At 12:50 that afternoon Warden Charles Terry of the Douglas County Corrections Center arrived at the sheriff's office per Joy's request. Warden Terry informed Joy that she could trust the officers and "that if she knew anything it was best for her to cooperate and tell them what she knew and tell the truth . . . ." Terry went on to explain that no promises could be made. Shortly thereafter, and after signing the *Miranda* rights advisory form, Joy made incriminating statements as to how she and three other prostitutes had killed Laura J. LaPointe.

After a pretrial hearing on Joy's motion to suppress the statements, and after the trial court overruled her motion and subsequent objection at trial, the taped confession was heard by the jury.

In determining whether the State has shown the admissibility of custodial statements by the requisite degree of proof, this court will accept the factual determination and credibility choices made by the trial judge unless they are clearly erroneous, and in so doing we will look to the totality of the circumstances. *State v. Teater*, 209 Neb. 127, 306 N.W.2d 596 (1981); *State v. Strickland*, 209 Neb. 133, 306 N.W.2d 600 (1981).

The State agrees that the interrogation of the defendant was custodial and subject to the guidelines outlined in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and its progeny. In *Edwards v. Arizona*, 451 U.S. 477, 484-85, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981), the U.S. Supreme Court held

> that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges, or conversations with the police.*

(Emphasis supplied.) See, also, *State v. Pittman*, 210 Neb. 117, 313 N.W.2d 252 (1981).

There is no doubt that defendant unequivocally invoked her right to remain silent unless an attorney was present. Once the right to counsel and the right to remain silent have been invoked

by a defendant, the defendant cannot be persuaded to waive his rights, and there is a strong presumption against waiver. If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. *State v. Teater, supra*. The State has not met this burden. From the outset the deputy sheriffs' actions were aimed at soliciting incriminating statements from the defendant. The officers, on their own initiative, contacted the attorney whom the defendant contended represented her. The deputy sheriffs then told the defendant that the attorney did not nor would not represent her. Later questioning was then initiated by Tramp when he asked the defendant to continue the interview without the presence of counsel or without even allowing the defendant to contact an attorney. The defendant having invoked her constitutional rights to remain silent and to have an attorney present during questioning, it then became incumbent upon the authorities to refrain from initiating further conversation and to scrupulously honor the defendant's request. See, *State v. Pittman, supra; State v. Strickland, supra*. The officers, having violated these obligations, rendered any subsequent statements by the defendant inadmissible.

In view of the determination made it is unnecessary to discuss whether the defendant's statements were extracted through the use of improper influence. See, *State v. Teater, supra; State v. Hunsberger*, 211 Neb. 667, 319 N.W.2d 757 (1982).

The conviction and sentence of the defendant are vacated and the cause remanded to the district court.

REVERSED AND REMANDED.