STATE OF NEBRASKA, APPELLEE, V. HAROLD W. CRISP, APPELLANT.

361 N.W.2d 544

Filed February 8, 1985.   No. 84-478.

Thomas M. Kenney, Douglas County Public Defender, and Victor Gutman, for appellant.

Paul L. Douglas, Attorney General, and Timothy E. Divis, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

In this appeal defendant, Harold W. Crisp, argues that his felony first degree murder conviction should be reversed and vacated because the trial court erred in failing to suppress each and all of the statements he made to an Omaha police officer. The record does not sustain his assignment of error, and we accordingly affirm the conviction which resulted in a sentence of imprisonment for life, consecutive to any other sentence for which Crisp was already liable.

The victim, Rose Mary Johanna Caples, was last seen alive at an Omaha bar on September 12, 1983. Her partially decomposed body was found on October 13, 1983, in a field behind an Omaha manufacturing plant. Subsequently, Officer James Wilson of the Omaha Police Department was assigned to investigate the death. As part of his investigation, Officer Wilson talked with defendant's brother, Joseph Crisp. Joseph Crisp testified at trial that defendant had come to his house early one morning in mid-September of 1983, at which time defendant appeared frightened and intoxicated by drugs and alcohol, and said he thought he had killed someone and that he had to leave. Joseph Crisp noticed blood on defendant's clothing and that defendant was driving a car which did not belong to him. The brother showed defendant how to get onto the Interstate to Chicago and parted with him at that point. Joseph Crisp did not see defendant again until after the latter's arrest.

Mary Flowers, who lived with Joseph Crisp, testified that defendant came to their house around September 13, 1983, and told her he thought he had stabbed a woman when he was attempting to steal her purse and her car. Ms. Flowers noticed blood on the defendant's hands and that he had with him a large brown purse which he emptied, displaying money, identification and other papers, and a wallet. Defendant used the money in the purse to buy drugs before leaving for Chicago.

A store owner from Iowa testified that on September 13, 1983, in the early morning hours, he discovered defendant burglarizing his store. The car he identified as driven by

defendant was found to have belonged to the victim.

On October 20, 1983, Officer Wilson traveled to Fairhope, Alabama, to interview defendant, who had been arrested there on unrelated charges. Before the interview began, Officer Wilson advised defendant of his *Miranda* rights. During their conversation, defendant informed Officer Wilson that he had recently attempted suicide at the Alabama jail, and repeatedly told Officer Wilson that he needed help, an observation defendant was to repeat at later meetings with Officer Wilson. Officer Wilson testified he told defendant he would "talk to the county attorney as far as having his defense people get him evaluated or whatever," and that he would see "what I [Wilson] could do as far as getting psychiatric help given to him, conferring with the county attorney, I would do what I could." Defendant testified that Officer Wilson said he (defendant) "would get help." Although the record does not tell us what, if anything, the county attorney may have done, it does reflect that Officer Wilson did in fact tell the county attorney that defendant wanted help.

During the October 20 interview, defendant made a statement to Officer Wilson about robbing the victim. After completion of that statement defendant was again advised of his *Miranda* rights, and Officer Wilson then obtained defendant's tape-recorded statement. In this tape-recorded statement defendant said he had escaped from the Douglas County jail work release program and that he had stolen the victim's car so that he could leave town. He admitted striking the victim and throwing her body out of the car, but did not admit killing her. Defendant reiterated that he was high on alcohol and drugs during the altercation and that he needed help.

The following day defendant was flown back to Omaha, accompanied by Officer Wilson. Before leaving the airport in Fairhope, Officer Wilson again read the *Miranda* rights to defendant. However, Officer Wilson did not interrogate defendant during the air trip.

Upon arriving in Omaha defendant was transported to police headquarters. Defendant informed Officer Wilson that he wanted to give another statement, and defendant was once

again advised of his *Miranda* rights. In this statement defendant admitted killing the victim but later refused to allow this statement to be tape-recorded.

Prior to trial, a hearing was held on defendant's motion to suppress each and all of the statements he had made to Officer Wilson. The court found each of the statements to have been made freely and voluntarily, and further found that defendant had been properly advised of his *Miranda* rights and had knowingly and voluntarily waived those rights. The court then ruled the statements were admissible at trial.

Defendant then waived a jury, and at the bench trial the statements at issue were admitted into evidence over his objection.

Defendant contends that although he had been properly advised of his *Miranda* rights, his statements were nonetheless not freely and voluntarily given because he was improperly induced into making them by Officer Wilson's promises to obtain the help which defendant needed.

We have repeatedly said that in order to be admissible a statement or confession must have been freely and voluntarily made, and must not have been extracted by any direct or implied promise or inducement, no matter how slight. *State v. Gonzales*, 218 Neb. 43, 352 N.W.2d 571 (1984); *State v. Mayhew*, 216 Neb. 761, 346 N.W.2d 236 (1984); *State v. Rife*, 215 Neb. 132, 337 N.W.2d 724 (1983); *State v. Erks*, 214 Neb. 302, 333 N.W.2d 776 (1983); *State v. Hunsberger*, 211 Neb. 667, 319 N.W.2d 757 (1982). The determination of whether a statement was freely and voluntarily made necessarily turns on the totality of circumstances in any particular case. *State v. Rife, supra*. A finding of the trial court that a statement of an accused was freely and voluntarily made will ordinarily not be set aside on appeal unless the finding is clearly erroneous. *Id*.

We held in *State v. Mayhew, supra*, that a county attorney's promise to recommend a concurrent sentence for the defendant in return for his confession constituted an improper inducement such as to render the statement inadmissible. In *State v. Smith*, 203 Neb. 64, 277 N.W.2d 441 (1979), we held that a police officer's offer to attempt to have the defendant's case transferred to juvenile court in return for his confession

was an improper inducement and rendered the defendant's statement involuntary. In *State v. Erks, supra,* we noted that statements by police to the defendant that the court would be informed about whether the defendant cooperated with the investigation did not, in and of themselves, constitute improper inducements. We further noted that deception practiced by the police was not sufficient to make an otherwise valid confession inadmissible unless it was such as to produce a false or unworthy confession. We also stated that "[a]n interrogation tactic in which the police appear to befriend the defendant and are 'on his side' does not in itself render a confession involuntary." 214 Neb. at 305, 333 N.W.2d at 779. We held in that case, however, that the defendant, being accused of a crime of a sexual nature, could have been influenced by indications that the police who sought help for him would also protect him and his family from embarrassment and that the trier of fact could find that confessions made in response to those inducements were not made voluntarily.

In *State v. Muenchau and Brown,* 209 Neb. 552, 308 N.W.2d 824 (1981), Judge Boslaugh in a single-judge opinion ruled that when a tangible benefit is offered in exchange for a confession, the confession must be suppressed. He then concluded that a promise by an interrogating officer to make the county attorney aware that defendant had cooperated by giving a statement was not such an inducement as to render the statement involuntary. He reasoned that the county attorney would know by the existence of the statement itself that the accused had cooperated and, therefore, no tangible benefit had been offered.

The record in this case establishes that defendant did indeed tell Officer Wilson several times that he was addicted to alcohol and drugs and needed help. However, while these facts indicate that defendant may have been susceptible to improper inducement, there is nothing to indicate that Officer Wilson offered to get help for defendant in return for a confession. This is perhaps best illustrated by defendant's own testimony on direct examination by his trial attorney:

Q.  Well, let me ask you this. Did he say you wouldn't get any help unless you told him the truth?

A.   No, he didn't. He told me that I would get help; that he would see that I would get help, period. He kept on telling me this.

Q.   Well, did he indicate that if you didn't cooperate with him, you wouldn't get help?

A.   No, he didn't.

Q.   Did you think that would happen?

A.   Say that again.

Q.   Did you think that you had to tell him what was going on or you wouldn't get any help?

A.   Yes, I did.

Q.   Why?

A.   I don't really know. I can't answer that, because I don't know.

Q.   You just felt that way?

A.   I just felt that way.

Considering the totality of the circumstances, we find that defendant was not improperly induced to give his statements to Officer Wilson. Although defendant let Officer Wilson know that he needed help, Officer Wilson did not offer a tangible benefit to him in return for his confession. Officer Wilson told defendant only that he would do what he could to obtain help, but did not say that obtaining the statements was a condition to Officer Wilson's trying to do what he could. At the most, Officer Wilson's comments may have led defendant to believe that Officer Wilson had befriended him. That circumstance, in and of itself, is not enough to render defendant's statements involuntary and inadmissible.

The trial judge, having listened to testimony and observed the demeanor of the witnesses, determined that defendant gave his statements knowingly, freely, and voluntarily. It cannot be said that the trial court's determination was clearly erroneous. We therefore affirm defendant's conviction.

AFFIRMED.

WHITE and SHANAHAN, JJ., dissent.