STATE OF NEBRASKA, APPELLEE, V. JO HELEN ROBERTSON, APPELLANT.

366 N.W.2d 429

Filed April 26, 1985.   No. 84-046.

Thomas M. Kenney, Douglas County Public Defender, and Bennett G. Hornstein, for appellant.

Paul L. Douglas, Attorney General, and Timothy E. Divis, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

A Douglas County jury found Jo Helen Robertson guilty of the first degree murder of Laura LaPointe, a prostitute. Robertson was sentenced to life imprisonment and appealed her conviction.

In the early morning of April 11, 1983, a passer-by discovered the nude, brutally beaten body of Laura LaPointe in a roadside ditch located in a heavily wooded area near Hummel Park north of Omaha. Close to LaPointe's body was an empty brandy bottle and a "stick," apparently a tree limb 6 to 7 feet long with a 3-inch diameter.

Investigation in the LaPointe murder focused on three Omaha prostitutes—Geraldine "Dee" Carr, Loray "Rachael" Smith (also known as Laura (Larie) "Baby Girl" Johns), and Carol Joy. On June 24 Jo Helen Robertson was being held on warrants for undisclosed misdemeanors and asked to talk to someone about the LaPointe homicide, although Robertson was not then a suspect in the killing. Philip Butler, a Douglas County deputy sheriff, was summoned and informed Robertson of the *Miranda* warnings. After the deputy read the *Miranda* warnings, Robertson asked whether she might be released on bond if she provided information about the LaPointe homicide. The deputy responded "No," but told Robertson

we will check it [the information] out and if we find it accurate we will go to the City Prosecutor's office and I will tell him that you are assisting us in a homicide investigation.

. . . .

. . . I don't know what the City Prosecutor would do. Perhaps in the interest of justice he would take care of the cases, but I don't know if that would happen.

Robertson gave a tape-recorded interview in which she denied being in the Hummel Park area where LaPointe's body was found. However, Robertson told the deputy that in the late evening of April 10 Geraldine Carr, Loray Smith, Carol Joy, and Robertson were driving in downtown Omaha with four pimps. According to Robertson, the four pimps decided to "teach LaPointe a lesson," but Robertson asked to leave the car because she did not want "to teach anybody a lesson." The next day, April 11, Carol Joy told Robertson that two of the pimps had beaten LaPointe to death with a baseball bat in a park. Throughout her tape-recorded interview, Robertson made numerous contradictory statements about the occupants of the car in which she had been riding and about the identity of the individuals who went to the park where LaPointe was murdered.

The homicide investigation shifted to a 1977 Ford LTD located at Geraldine Carr's residence. Equipped with a search warrant, law enforcement officers searched the Ford LTD and looked for a razor blade, baseball bat, bloodstained clothes, and blood in the car's interior. As a result of their vacuum "sweeping" and search of the LTD, officers found strands of hair, fibers, a gold pendant necklace, and a softball bat. Officers tried but failed to obtain "readable" fingerprints from the LTD and the objects removed from that automobile.

On June 28 the police arrested Geraldine Carr, Carol Joy, and Robertson. Deputy Butler again questioned Robertson after informing her of the *Miranda* warnings. Robertson denied any involvement in the LaPointe murder.

Officers had obtained hair samples from Carol Joy and Robertson. These samples and a sample of LaPointe's hair were

microscopically analyzed by the Federal Bureau of Investigation at its Washington, D.C., laboratory. Hair embedded in the "stick" found at the scene of the crime was identified as LaPointe's. Hair taken from the softball bat was identified as Joy's. No hair sample was identified as belonging to Robertson.

In a pretrial motion Robertson moved to suppress her tape-recorded statement obtained on June 24. The district court overruled Robertson's motion, and the taped interview was later heard by the jury in Robertson's trial.

Robertson's jury trial commenced on December 5. In the course of the State's case, a pathologist testified that LaPointe's death was caused by injuries inflicted with blunt instruments. The pathologist identified the "stick," or tree branch, and softball bat as instruments capable of inflicting the wounds and injuries sustained by LaPointe.

The State called Geraldine Carr as a witness. Carr testified concerning the unspeakably cruel treatment of prostitutes at the hands of pimps, including physical violence and beatings. When questioning was directed to the LaPointe homicide, on instruction from her attorney Carr invoked her privilege against self-incrimination. As authorized by Neb. Rev. Stat. § 29-2011.02 (Cum. Supp. 1984), the prosecutor asked and received immunity for Carr, and questioning continued. Carr testified that in the late evening of April 10 she and three other prostitutes, Loray Smith, Carol Joy, and Robertson, were in a Ford LTD driven by Carr. This foursome obtained and drank a bottle of brandy. After drinking the brandy one of the four suggested robbing a "trick," that is, "flag down" a prospective male and "sneak up and take his money." Shortly afterward, the four saw LaPointe on the street and invited her to the car. In the back seat of the LTD was a softball bat which Carr used for "protection." In place of a male victim the four had decided to rob LaPointe. LaPointe entered the car and the five drove to an alley in north Omaha, where Robertson, in the back seat with Carol Joy and LaPointe, told LaPointe to "give up" her money. After LaPointe was forced to disrobe, Carol Joy and Robertson searched LaPointe's clothing and purse but found

only $25. Disappointed by that small amount of money, Joy gave a "straight-edge razor" to Robertson, who began cutting LaPointe's hair. Robertson tore a gold pendant necklace from LaPointe and inflicted a minor cut with the razor on LaPointe. Intending to find a "trick" for LaPointe so she could obtain some money, the five drove around Omaha and eventually went to Hanscom Park, where LaPointe was forced to have oral sex with Carol Joy. During this episode, Robertson "popped" LaPointe in the head with the razor. Sometime after midnight, Robertson suggested going to Hummel Park. At that park LaPointe, Carol Joy, and Robertson got out of the car. Although Carr did not recall who had taken the softball bat from the LTD, Carr testified that Robertson beat LaPointe with the ball bat while Joy struck the victim with the "stick." The four left LaPointe's body in a ditch and returned to Omaha, where they threw LaPointe's clothes into a trash receptacle.

Carr further testified that there were "no deals" for her testimony on behalf of the State; rather, she testified because "I want the truth to be told." At the time of Robertson's trial Carr had not been brought to trial.

The State then called Carol Joy to testify. After asking the witness' name, and as his second question in direct examination, the prosecutor asked Joy: "Carol, you have been convicted of first degree murder in this particular case; is that correct?" Robertson objected; the court overruled Robertson's objection; and Joy answered, "Yes, I have," and then referred to testifying in her previous jury trial. (On August 10, 1984, or approximately 8 months after Robertson's trial, this court reversed Joy's conviction and remanded for a new trial. See *State v. Joy*, 218 Neb. 310, 353 N.W.2d 23 (1984).)

Joy continued her testimony and stated that on April 10, before meeting the other prostitutes and LaPointe, she had a "couple of shots of heroin" and some Valium, and had consumed a considerable quantity of alcoholic beverage. Joy corroborated the testimony given by Carr regarding the meeting with LaPointe and decision to rob her. According to Joy, the five prostitutes drove to Hanscom Park, where Joy gave Robertson a razor. At the park Robertson began

"clunking her," that is, hitting LaPointe with the end of the ball bat. Robertson told LaPointe to disrobe, and finding no money in LaPointe's clothes, Robertson started cutting LaPointe's hair with the razor. Joy reluctantly engaged in oral sex with LaPointe. Later, the five drove to north Omaha, where they obtained a bottle of brandy and went to Hummel Park. At Hummel Park Joy removed $25 from LaPointe's jeans and got out of the car with LaPointe and Robertson. A short distance from the car, Robertson hit LaPointe with the ball bat, but no one struck LaPointe with the "stick." Joy testified that Robertson and she took turns hitting LaPointe with the ball bat until Joy said "that was enough." Joy determined that LaPointe was dead, and the foursome returned to Omaha.

Although Robertson did not testify, she offered medical testimony about her mental condition on April 11, 1983. A psychiatrist testifying for Robertson could not express an opinion that Robertson was unable to distinguish right from wrong on April 11.

In her appeal Robertson claims two errors, namely, (1) her tape-recorded interview should have been suppressed because such statement was involuntary due to a promise made by the deputy sheriff when he recorded the interview and (2) prejudice by allowing Joy to testify that she had been convicted for the same offense charged against Robertson, the LaPointe murder.

Recently, in *State v. Bodtke, ante* p. 504, 363 N.W.2d 917 (1985), we held that voluntariness is the ultimate test to use an accused's statement, admission, or confession as evidence in a criminal prosecution. In *State v. Crisp, ante* p. 265, 361 N.W.2d 544 (1985), we stated that, to be admissible, an accused's statement, admission, or confession must have been freely and voluntarily made, and must not have been extracted by any direct or implied promise or inducement, no matter how slight. See, also, *State v. Mayhew*, 216 Neb. 761, 346 N.W.2d 236 (1984). Whether a statement, admission, or confession has been freely and voluntarily made depends upon "the totality of the circumstances," and a finding by the trial court regarding voluntariness will not be set aside unless such finding is clearly erroneous. See *State v. Crisp, supra*.

Robertson argues that her statement was induced by the

deputy sheriff's promise to obtain her release on bail for misdemeanor charges. The record does not support Robertson's claim. Deputy Butler promised only that "we will check it [Robertson's information] out and if we find it accurate we will go to the City Prosecutor's office and I will tell them that you are assisting us in a homicide investigation." Was such statement by the deputy the type of promise rendering Robertson's statement involuntary and, therefore, inadmissible?

We have considered circumstances similar to the case at hand and have addressed this very question by answering that a promise to inform a prosecuting authority about a declarant's cooperation is not an improper inducement producing involuntariness. See *State v. Erks*, 214 Neb. 302, 333 N.W.2d 776 (1983). See, also, *United States v. Curtis*, 562 F.2d 1153 (9th Cir. 1977); *United States v. Glasgow*, 451 F.2d 557 (9th Cir. 1971); *United States v. Frazier*, 434 F.2d 994 (5th Cir. 1970). "A simple representation . . . that the fact of his cooperation will be made known to prosecuting authorities is insufficient to render a confession involuntary." *United States v. Curtis, supra* at 1154. Under the circumstances the deputy's statement or remark to Robertson that her cooperation in the investigation would be made known to a prosecutor did not in and of itself render Robertson's statement involuntary. The district court was correct in overruling Robertson's motion to suppress and allowing the tape-recorded statement into evidence.

Robertson's second assignment of error relates to the propriety of the prosecutor's asking Carol Joy whether she had been convicted of the first degree murder of LaPointe—the same charge on which Robertson was being tried. At the outset we emphasize that the prosecutor's question was whether Joy had been *convicted*, not whether she admitted participating in the homicide. Was Joy's conviction of the LaPointe murder admissible evidence against Robertson in a trial for the same homicide?

Perhaps a constitutional question is presented on account of the prosecution's use of Joy's conviction as evidence in Robertson's trial. In *Bruton v. United States*, 391 U.S. 123, 134-35, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968) (citing and

quoting from *People v. Fisher*, 249 N.Y. 419, 164 N.E. 336 (1928), Lehman, J., dissenting), the U.S. Supreme Court criticized the proposition that juries could be counted on to disregard inadmissible evidence and acknowledged,

> "We still adhere to the rule that an accused is entitled to confrontation of the witnesses against him and the right to cross-examine them . . . . We destroy the age-old rule which in the past has been regarded as a fundamental principle of our jurisprudence by a legalistic formula, required of the judge, that the jury may not consider any admissions against any party who did not join in them. We secure greater speed, economy and convenience in the administration of the law at the price of fundamental principles of constitutional liberty. That price is too high."

Although *Bruton* involved use of a codefendant's incriminating extrajudicial statement in determining a defendant's guilt, the U.S. Supreme Court has recognized the importance of a defendant's right to confrontation secured by the sixth amendment to the U.S. Constitution. See, also, Neb. Const. art. I, § 11, an accused's right "to meet the witnesses against him face to face." Whether reference to Joy's conviction for the LaPointe murder deprived Robertson of the right to test the witnesses and evidence in her trial need not be resolved in the present case, for we may dispose of Robertson's assignment of error without considering the possible constitutional question.

Only relevant evidence is admissible, and evidence which is not relevant is not admissible. See Rule 402, Nebraska Evidence Rules (Neb. Rev. Stat. § 27-402 (Reissue 1979)). "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, Nebraska Evidence Rules (Neb. Rev. Stat. § 27-401 (Reissue 1979)). How evidence of a different jury's verdict finding a codefendant guilty of the same charge, but based on esoteric evidence of some nature and perhaps quite dissimilar, has probative value of a defendant's guilt in a present prosecution makes the mind boggle due to infinite improbabilities. With all the variables and unknown quantities entering another jury's verdict, any connection

between Joy's conviction and Robertson's guilt is reduced to a possibility, not the rational relationship based on likelihood required for relevant evidence. See *United States v. Vandetti*, 623 F.2d 1144 (6th Cir. 1980) (codefendant's conviction "has no tendency to make the existence [of defendant's guilt] more probable or less probable than it would be without the evidence"). *Id*. at 1147. See, also, *United States v. King*, 505 F.2d 602 (5th Cir. 1974) ("One person's guilty plea or conviction may not be used as substantive evidence of the guilt of another."). *Id*. at 607. Joy's conviction of the LaPointe murder was not relevant to prove Robertson's guilt of the same homicide. It was error for the district court to permit the State to introduce irrelevant evidence of Joy's conviction.

We must next consider whether admitting evidence of Joy's conviction was prejudicial or reversible error rather than harmless error. Rule 103(1) of the Nebraska Evidence Rules provides: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." Neb. Rev. Stat. § 27-103(1) (Reissue 1979). Further, in considering whether admission of Joy's conviction was harmless error, we must conclude "the error was harmless beyond a reasonable doubt." *State v. Sims*, 213 Neb. 708, 714, 331 N.W.2d 255, 259 (1983).

The clear weight of authority in this country is that where two or more persons are charged with the same criminal offense but are tried separately, the fact that one defendant has pleaded guilty or has been convicted is inadmissible against the other defendant. A lengthy annotation is found in Annot., Prejudicial effect of prosecuting attorney's argument or disclosure during trial that another defendant has been convicted or has pleaded guilty, 48 A.L.R.2d 1016 et seq. (1956). See, also, *State v. McDonald*, 117 Ariz. 159, 571 P.2d 656 (1977) (by the "overwhelming weight of authority in this country," disposition of the same charge against a codefendant is inadmissible in the trial of the other defendant), *id*. at 161, 571 P.2d at 658; *State v. Pikul*, 150 Conn. 195, 187 A.2d 442 (1962) (State's evidence on direct examination disclosing that a codefendant had been convicted of the same charge against the defendant "not only was improper but was highly prejudicial.

[Admitting such evidence] was erroneous and harmful and necessitates a new trial."), *id*. at 199, 187 A.2d at 444.

In condemning a prosecutor's use of a codefendant's conviction of the same charge against the defendant on trial, the Supreme Court of Mississippi in *Ivy v. State*, 301 So. 2d 292, 293 (Miss. 1974), stated:

> The jury thus had before it evidence of the co-indictee's conviction and sentence from which it could very likely conclude that Ivy was guilty because his associate and co-indictee was convicted and sentenced, or more modernly put, the jury could find that he was guilty by association.
>
> We have consistently held evidence of this nature to be inimical to a fair trial.

Accord, *State v. Redden*, 71 Wash. 2d 147, 426 P.2d 854 (1967); *People v. Aubrey*, 25 A.D.2d 604, 267 N.Y.S.2d 654 (1966). Our system of criminal justice does not recognize mere association as a premise for guilt.

Beyond guilt by association there are still other reasons that evidence of a codefendant's conviction on the same charge has no place in the State's case in chief against a defendant. Fortunately, we are still in a time when juries attach significance to courtroom proceedings. A previous jury's verdict that a codefendant is guilty of the same charge is probably very impressive on a jury in a defendant's subsequent trial. Bolstered by another jury's verdict, a jury might use a codefendant's conviction as a springboard to hurdle reasonable doubt in the present trial of a defendant. Circumvention of the State's duty to produce evidence of guilt beyond a reasonable doubt affects a defendant's substantial right to a fair trial and results in unfair prejudice defying description.

Further, in using another jury's verdict as evidence, there is the insidious invitation to trust and substitute another jury's judgment rather than fairly deliberate evidence in a present prosecution. The fact remains in our criminal justice system that a defendant has a right to have guilt determined upon the evidence against him or her, not by evidence presented and disposition made in a criminal prosecution against someone else. See, *United States v. Fleetwood*, 528 F.2d 528 (5th Cir.

1976); *State v. Felton*, 131 N.J. Super. 344, 330 A.2d 23 (1974).

In the case against Robertson there was no physical evidence connecting Robertson with the LaPointe murder. Also, Robertson never admitted any involvement in that homicide. To convict Robertson the State relied heavily on the testimony of Geraldine Carr and Carol Joy. Under the circumstances the Robertson jury may have considered Joy's conviction, later reversed by this court, as corroboration for Carr's testimony. Additionally, Joy's conviction, although subsequently vacated in this court, could be seen by the jury as validation of Joy's testimony itself. Upon the entire record we cannot conclude beyond a reasonable doubt that evidence of Joy's conviction could not and did not undermine fairness in Robertson's trial and improperly influence the jury in determining Robertson's guilt in the LaPointe murder. Admission of Joy's conviction as evidence against Robertson was reversible error. Therefore, the conviction and sentence of Robertson are vacated, and this cause is remanded to the district court for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

BOSLAUGH, J., dissenting.

Evidence that another person has been convicted of the same crime for which the defendant is on trial is not admissible as proof of the guilt of the defendant. The same evidence, however, may be admissible for many other reasons.

It is generally held that the State may show that its witness has been convicted of a felony instead of waiting for the defendant to develop that point on cross-examination. See, *United States v. Del Purgatorio*, 411 F.2d 84 (2d· Cir. 1969); *United States v. King*, 505 F.2d 602 (5th Cir. 1974).

Evidence relating to bias is relevant because certain relationships and circumstances may impair the impartiality of the witness. For this reason evidence relating to the underlying relationships, circumstances, and influences operating on the witness should be disclosed to the jury. The fact that a witness had not only participated in the same crime but had been convicted of that crime is such a circumstance.

In *State v. Cole*, 252 Or. 146, 448 P.2d 523 (1968), such evidence was held admissible as proof of the facts and circumstances of the crime, the circumstances under which the

witness was testifying, his status with regard to the charge, and as a matter affecting the credibility of the witness.

In *Dye v. State*, 77 Ga. App. 517, 48 S.E.2d 742 (1948), such evidence was held admissible to show the status or relationship of the parties.

Evidence as to the prior conviction of the witness in this case was admissible, not as proof of the defendant's guilt, but to show her prior conviction of a felony and establish the relationship between the witness and the crime for which the defendant was on trial.

I would affirm the judgment.

HASTINGS, J., joins in this dissent.