STATE OF NEBRASKA, APPELLEE, V. STEVEN P. LIEBERMAN, APPELLANT.

382 N.W.2d 330

Filed February 28, 1986.   No. 85-296.

James C. Stecker, for appellant.

Robert M. Spire, Attorney General, and Lynne R. Fritz, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

Steven P. Lieberman appeals from his conviction on charges of conspiracy, robbery, and use of a firearm in the commission of a felony. In an amended information Lieberman was also charged with being a habitual criminal, in violation of Neb. Rev. Stat. § 29-2221 (Reissue 1979). A jury found Lieberman guilty on counts I, II, and III.

Following a hearing at which the district court adjudged Lieberman to be a habitual criminal, the trial judge sentenced Lieberman on count I, conspiracy, to 15 years' imprisonment in the Nebraska Penal and Correctional Complex; on count II, robbery, to 15 years' imprisonment, to be served concurrently with the sentence imposed on count I; and on count III, use of a firearm in the commission of a felony, to 10 years' imprisonment, to be served consecutively to the sentences imposed in counts I and II.

On February 17, 1984, at approximately 8:30 p.m., two masked men, one carrying a bag and the other a gun, entered the Holiday Liquors store in Columbus, Nebraska, and demanded money. The store employee on duty emptied the currency contents of the cash register into the bag and the pair fled.

During the investigation that same evening, Columbus police officers discovered footprints leading toward the store, which officers traced to a house rented by a Tim Johnson. Johnson, Chris Landin, also known as Chris Keller, Randy Arnone, and defendant Lieberman were at the house when police arrived. Landin subsequently confessed and thereafter named a number of parties as participants in the robbery. After naming three

different accomplices, Landin implicated Lieberman as a participant in the robbery. Lieberman was arrested and charged with the offenses of which he was later convicted.

Lieberman filed a motion in limine to limit testimony concerning a prior conviction of robbery in 1979. The district court overruled the motion.

At trial Chris Landin testified for the State. On direct examination he stated that Steve Lieberman had been convicted in 1979 of robbing a fast-food restaurant in Columbus and had spent time in the state penitentiary for the crime. Landin also testified that he, Landin, had been charged with and convicted of robbing the Holiday Liquors store. Tim Johnson also testified that Lieberman had been convicted in the 1979 robbery and that he, Johnson, had already been convicted and sentenced for his participation in the Holiday Liquors store robbery. Lieberman's counsel did not object to the State's questioning of either Landin or Johnson on these matters. Landin and Johnson identified Lieberman as a participant in the robbery.

The jury found Lieberman guilty on all counts. Lieberman filed a motion for new trial on July 25, 1984, and requested the court to appoint new counsel. New counsel was appointed.

At an enhancement hearing on August 17, 1984, for the purpose of determining whether Lieberman was a habitual criminal, the court found that, based upon the records of prior convictions presented by the State, Lieberman was a habitual criminal as defined by § 29-2221. On December 21, 1984, the court sentenced Lieberman to enhanced sentences on each of the three counts.

At the March 1, 1985, hearing on his amended motion for new trial, Lieberman presented affidavits which he claimed, in the aggregate, constituted significant newly discovered evidence entitling him to a new trial. The trial court overruled the motion, and this appeal followed.

In his first assignment of error, Lieberman claims that the trial court erred when it overruled his motion in limine and allowed Johnson's and Landin's testimonies about Lieberman's prior conviction and their own status as convicted felons.

In *State v. Harper*, 215 Neb. 686, 340 N.W.2d 391 (1983), we

held that the overruling of a motion in limine does not eliminate the need to object to the introduction of evidence in order to preserve the error. *State v. Harper* is dispositive of Lieberman's first assignment of error. Lieberman's counsel failed to object at trial when the State questioned Landin and Johnson on direct examination. Because there is no objection in the record, there is no question to be examined by this court on appeal. The district court's order denying the motion in limine is not an appealable order. *State v. Harper, supra* (citing *State v. Tomrdle*, 214 Neb. 580, 335 N.W.2d 279 (1983)).

Lieberman asserts trial counsel's failure to object to the testimony of Landin and Johnson as the partial basis for his next assignment of error. Lieberman claims that this act, along with counsel's failure to call certain witnesses, constituted ineffective assistance of counsel, in violation of guarantees of the sixth amendment of the U.S. Constitution.

In *State v. Robinson*, 218 Neb. 156, 352 N.W.2d 879 (1984), and again in *State v. Harper*, 218 Neb. 870, 359 N.W.2d 806 (1984), we set out in some detail the standards by which effective assistance of counsel is measured. In *Robinson* we assessed the validity of the defendant's claim according to the two-part test set forth by the U.S. Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Quoting *Strickland,* we said in *Robinson* at 159-60, 352 N.W.2d at 881:

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.
>
> . . . .
>
> Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were

outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Further quoting *Strickland*, we said in *Robinson* at 160-61, 352 N.W.2d at 882:

The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

. . . .

The governing legal standard plays a critical role in defining the question to be asked in assessing the prejudice from counsel's errors. When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. . . .

In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would

reasonably likely have been different absent the errors.

The record shows that Lieberman's trial counsel did not object when the State elicited testimony from Landin and Johnson concerning their status as convicted felons. Chris Landin related on direct examination his participation in the Holiday Liquors store robbery and his subsequent conviction. Tim Johnson testified, on direct examination, that he was a convicted felon and, on cross-examination, that he had received a 1-year sentence for his participation in the Holiday Liquors store robbery, the reduced sentence being part of his plea agreement. Johnson also testified that his agreement to testify at Lieberman's trial was a condition of the plea bargain.

The trial court specifically instructed the jury that evidence received which shows that a witness has been convicted of a felony can be considered only as affecting his credibility. Further, the court gave a cautionary instruction regarding the credibility of an accomplice and the need for the jury to know of the possible motives, biases, or interests of such a witness.

Lieberman bases his claim on our decision in *State v. Robertson*, 219 Neb. 782, 790, 366 N.W.2d 429, 434 (1985), in which a majority of this court held that "where two or more persons are charged with the same criminal offense but are tried separately, the fact that one defendant has pleaded guilty or has been convicted is inadmissible against the defendant." Lieberman contends that this rule forecloses the introduction of any evidence of a coparticipant's conviction, while the State counters that the rule applies only when a coparticipant's conviction is offered as substantive proof of the defendant's guilt. When, as here, the evidence is offered only to impeach the witness, the State contends that *Robertson* does not foreclose the introduction of a coparticipant's conviction.

We need not reach the issue of the proper interpretation of *Robertson*, because we believe that, on its face, the record fails to support Lieberman's claim that his counsel's actions unfairly prejudiced him.

After the State elicited from Tim Johnson the fact that he was a convicted felon and that he had been convicted and sentenced in the instant crime, the defendant's attorney on cross-examination took this evidence and, to the defendant's

advantage, emphasized the possibility of Johnson's motive to fabricate evidence against the defendant. That Johnson had received a reduced sentence in return for his testimony was made clear to the jury by Lieberman's attorney. With respect to Chris Landin, he did not receive a reduced sentence in return for his testimony against Lieberman, so Lieberman's attorney could not similarly raise the issue of Landin's biases and motives. Evidence of Landin's felony conviction could be seen as further impeaching the credibility of a witness who had repeatedly changed his mind about the identity of his accomplice.

Lieberman also argues that his attorney was ineffective when he failed to object to the State's introduction of evidence of Lieberman's 1979 robbery conviction.

This trial was a finger-pointing contest, with Lieberman implicating Johnson, and Johnson and Landin implicating Lieberman. Since credibility was critical, defense counsel introduced testimony of Johnson's bad reputation for truth and veracity and of Lieberman's good character. Anticipating cross-examination, Lieberman's attorney asked a character witness on direct examination whether he was aware that Lieberman had been in trouble with the law. The witness said that he knew of Lieberman's 1979 conviction but that this did not change his opinion of the defendant.

These actions by Lieberman's counsel were legitimate trial tactics under the circumstances of the case. Counsel could anticipate that evidence of Lieberman's good character opened the door for the State to introduce Lieberman's prior conviction, for impeachment purposes. To object to evidence that later would be produced by the defendant himself or adduced by the State on proper cross-examination cannot as a matter of law be said to constitute ineffective assistance of counsel. Neb. Rev. Stat. § 27-608(2) (Reissue 1979).

We have often held that the decision to object or not to object is part of trial strategy and that this court gives due deference to defense counsel's discretion in formulating trial tactics. See, e.g., *State v. Sayers*, 211 Neb. 555, 319 N.W.2d 438 (1982); *State v. Auger*, 206 Neb. 666, 294 N.W.2d 379 (1980); *State v. Bartlett*, 199 Neb. 471, 259 N.W.2d 917 (1977). To maintain a

claim of ineffective assistance of counsel, the record must affirmatively support the defendant's position. *State v. Herren*, 212 Neb. 706, 325 N.W.2d 151 (1982). Further, the effectiveness of counsel will not be judged by hindsight. *State v. Hochstein,* 216 Neb. 515, 344 N.W.2d 469 (1984), *cert. denied* 469 U.S. 873, 105 S. Ct. 226, 83 L. Ed. 2d 156. We conclude that Lieberman has failed to support adequately his claim of prejudice in counsel's decision not to object to this testimony.

Lieberman also argues that his counsel's failure to call certain witnesses constitutes ineffective assistance of counsel. Specifically, Lieberman asserts that James Christie and Amy Westra, friends of the defendant, should have been called to testify on his behalf. Christie's affidavit stated that if called to testify, he would state that Tim Johnson, rather than the defendant, committed the Holiday Liquors store robbery with Landin. Evidence in the record also indicates that Christie, if put on the stand, was subject to impeachment due to his pending trial on charges in an unrelated robbery.

It is a well-established rule in this state that a decision to call or not to call a witness, made by counsel as a matter of trial strategy, even if the choice may prove to be incorrect, does not, without more, sustain a finding of ineffectiveness of counsel. *State v. Brown*, 220 Neb. 305, 369 N.W.2d 639 (1985). Whatever good Christie's testimony may have done for Lieberman was overshadowed by his susceptibility to impeachment. Furthermore, the record indicates that both Christie's and Westra's testimony would have been cumulative at best.

Considering the totality of the evidence that was before the jury, we cannot say that counsel's failure to object and failure to call certain witnesses so undermined the proper functioning of the adversarial process that the trial cannot be relied on as producing a just result. Nor can we say that had an objection been made or another witness called, there is a reasonable probability that the result of the proceedings would have been different. There is simply no evidence in the record with which Lieberman can carry his burden of establishing that counsel's actions constituted a miscarriage of justice. Accordingly, this assignment of error is without merit.

Lieberman next contends that the trial court erred when it overruled his motion for a new trial based on newly discovered evidence. That evidence was described in an affidavit by Steven Hansen, stating that he had overheard a conversation in the Platte County jail between Lieberman and Landin, after Lieberman had been convicted, where Landin admitted that he had lied at trial. Hansen claims that Landin told Lieberman that he would now change his story if Lieberman could secure a new trial.

However, the State introduced Landin's affidavit, wherein he admitted that such a conversation took place but stating that he had never told Lieberman of a willingness to change his story. In his affidavit Landin also reaffirmed the truth of his trial testimony.

New evidence offered in support of a motion for new trial must be so potent that, by strengthening evidence already offered, a new trial would probably result in a new verdict. *State v. Bideaux*, 219 Neb. 718, 365 N.W.2d 830 (1985). Lieberman's new evidence does not meet this standard. At most, it is cumulative and serves only to reactivate the finger-pointing contest. Chris Landin's testimony was repeatedly impeached at trial. The jury was aware that Landin had named at least four coparticipants in the robbery, and the jury evaluated Landin's testimony with knowledge of his inconsistencies. The new evidence was cumulative impeachment, particularly in light of the State's rebuttal evidence. This assignment of error is, therefore, also without merit.

Lieberman's final assignment of error concerns the district court's finding that Lieberman is a habitual criminal as defined by § 29-2221 and the court's sentencing Lieberman in accordance with this finding. In *State v. Ellis*, 214 Neb. 172, 333 N.W.2d 391 (1983), a majority of this court held that § 29-2221 requires that the prior convictions relied upon by the State, except for the first conviction, "be for offenses committed after each preceding conviction, and all such prior convictions must precede the commission of the principal offense." *Id*. at 176, 333 N.W.2d at 394. The court further held: " ' "It is the *commission* of the second felony *after conviction* for the first,

and the *commission* of the *third* felony *after conviction* of the second that is deemed to make the defendant an incorrigible." ' . . ." *Id.* at 176, 333 N.W.2d at 394.

The record shows that Lieberman was not a habitual criminal, at least not in the statutory sense. Evidence adduced at the habitual criminal hearing established that Lieberman committed the offenses of robbery and use of a firearm in the commission of a felony in Platte County, Nebraska, on March 29, 1979. On June 15, 1979, he committed the felony offense of escape from lawful custody in Lancaster County. On September 14, 1979, Lieberman was sentenced to 1 year's imprisonment on the conviction for escape. On October 5, 1979, he was sentenced in Platte County District Court to imprisonment for 1 year on each count of robbery and use of a firearm. Thus, Lieberman had not been convicted of a first felony when he committed the second, nor was he convicted of the first prior to the conviction of the second.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.