STATE OF NEBRASKA, APPELLANT, V. JOE MCCARTHY, APPELLEE.

353 N.W.2d 14

Filed August 3, 1984.   No. 84-422.

Steven J. Moeller, Deputy Hall County Attorney, for appellant.

John R. Hall of Anderson, Vipperman, Hinman, Hall & Kovanda, for appellee.

GRANT, J.

Pursuant to Neb. Rev. Stat. § 29-824 (Cum. Supp. 1982), the State of Nebraska appeals the judgment of the Hall County District Court suppressing a statement made by defendant before *Miranda* warnings were read to him by police officers. The State admits the *Miranda* warnings were not given, but alleges warnings were unnecessary because the defendant was not in custody at the time of the statements and that, in any event, the warnings were unnecessary because there was an imminent danger to the public. For the reasons hereinafter set out, the order of the district court is affirmed.

On December 12, 1982, the Grand Island Police Department, with the help of officers from the Hall County Sheriff's Department and the Nebraska State Patrol, was investigating the possible homicide of Terry Atkinson. Jeff Benzel was a prime suspect. The authorities discovered that a car driven by Benzel had been seen at a residence occupied by Peggy McCarthy. The police suspected that Benzel was in the McCarthy residence, and they felt he was armed and dangerous. About 2:30 a.m. on December 13, 1983, the house was surrounded by various officers, including a S.W.A.T. team of the patrol. The officers surrounding the house were armed with shotguns, pistols, and "a high-powered rifle with scope." A spotlight was put in place, shining at the front door of the house. Peggy McCarthy was then called on the telephone, and she was told by the police to have all the people in the house come out, one at a time, with their hands in the air.

The people in the house did so. They were told to walk slowly toward the light and stop. They were patted down for weapons and told to enter a police van. Peggy McCarthy was the last to leave, and she informed the police that no other people were in the house. Five women, including Peggy's 9-year-old daughter, and two men (defendant and his brother Ed) left the house and entered the van. Guns were trained on those leaving the house.

The van was then driven to a police command post which had been established at the Al-Anon building, some three blocks from the residence. At the command post defendant was summoned from the van to go into the Al-Anon building. Two officers escorted him, one of whom was holding defendant's arm.

Inside the building, defendant was questioned by a captain of the police department. No guns were trained on him at the time. No *Miranda* warnings were given.

The police captain testified:

> A. I told Joe McCarthy that we were investigating a homicide; we had reason to believe that Jeff Benzel was involved. I needed to know if Jeff Benzel was hiding in the house at 1921 West Fifth. I says, officers are going to go in there, I need to know if they're going to be confronted by him in that house, and I need to know now.

To this interrogation defendant replied, according to the police captain, "I haven't seen Jeff Benzel all night."

After receiving the answer the police captain then testified:

> A. I told him not to lie to me. That I needed to know; for the safety of everybody involved in this investigation I needed to know if Jeff Benzel was in that house. If he wasn't in that house I needed to know where he went. I told him several times not to lie to me.
>
> Q. What was his response to your second, basically, question?
>
> A. I haven't seen Jeff Benzel all night.

Defendant testified the conversation between him and the police captain was as follows:

> Q. (By Mr. Moeller) The only questions he was asking was in relation to where Jeff Benzel was; is that correct?
>
> A. He asked me where he was and I said I didn't know.
>
> Q. Did he ask you again where he was? Did he explain why it was important to him?
>
> A. Then he asked me if I was with him. And I told him I don't want to get involved. He goes, were you with him, and I said no. He goes, you're lying.

Defendant was later charged with being an accessory to a felony. He then filed this motion to suppress his statements set out above.

The State states in its brief at 1 that "Miranda warnings need not be given to an individual who is not in custody who makes statements during an investigation." That is a sound statement of law, but does not address the issue in this case, which is, Was defendant in custody when he made his statement?

In *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), the Court stated:

> [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of the procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in

any significant way.

In the present case the district court found: "1. That the Defendant was in custody or otherwise deprived of his freedom; 2. That he was under compulsion to answer police questions."

The evidence fully supports those findings, and, indeed, could not support any other finding. On an appeal in a case such as this, we have held, "Factfindings by the trial court on a motion to suppress will not be overturned on appeal unless clearly wrong. A totality of the circumstances test is used." *State v. Whitmore, White, and Henderson,* 215 Neb. 560, 572, 340 N.W.2d 134, 141 (1983). The factfindings in this case are clearly not wrong in any respect.

The State contends that the recent case of *New York v. Quarles,* 467 U.S. ____, 104 S. Ct. 2626, 81 L. Ed. 2d 550 (1984), authorizes the trial court to receive the defendant's statement. In *Quarles* the Court held that "overriding considerations of public safety justify the officer's failure to provide *Miranda* warnings before he asked questions devoted to locating the abandoned weapon." 104 S. Ct. at 2629. In *Quarles* the police apprehended the defendant in a supermarket immediately after a reported rape. The police had been told the defendant had a gun. After handcuffing defendant and discovering he was wearing an empty shoulder holster, the officer asked him where the gun was. Defendant responded, "the gun is over there." 104 S. Ct. at 2630. The Supreme Court held the statement admissible.

Whatever the merits of the *Quarles* holding, that case is simply not this case. There was obviously no immediate danger present in this case. The house in question was surrounded by armed men; defendant McCarthy was certainly "deprived of his freedom"; and there was no public danger present. As a matter of fact, before the questioning of McCarthy was completed, the house had been determined to be empty.

The order suppressing defendant's statement was correct and is affirmed.

AFFIRMED.