STATE OF NEBRASKA, APPELLEE, V. LAVONNE F. BODTKE,
APPELLANT.
363 N.W.2d 917

Filed March 8, 1985.   No. 84-447.

David E. Cording, for appellant.

Paul L. Douglas, Attorney General, and Jill Gradwohl, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

This is an appeal from the district court for Thayer County where LaVonne F. "Bill" Bodtke was convicted in a jury trial on two counts of forgery, Neb. Rev. Stat. §§ 28-602(1) and 28-603(1) (Reissue 1979), Class III felonies. The district court sentenced Bodtke to a term of 1 year in the Nebraska Penal and Correctional Complex on each count, with sentences to run consecutively. We affirm the judgment of the district court.

Bodtke owned the Bodtke Insurance Agency in Hebron, Nebraska, and was an agent for Farmers Mutual Insurance Company of Nebraska (Farmers Mutual). Farmers Mutual insured farm property and livestock against loss caused by various casualties, for example, wind damage to buildings and livestock death from vandalism or lightning. Generally, when an insured sustained a loss, the local agent, such as Bodtke, would verify the loss and process the claim. The process included a written proof of loss—a "Property Loss Notice" and "Statement of Loss" signed by the insured—mailed by the agent to Farmers Mutual, which issued a settlement draft. Farmers Mutual would mail the settlement draft to the agent who had forwarded the claim, and the agent would deliver the draft to the insured-claimant.

During 1982, Bodtke, without knowledge of certain policyholders of Farmers Mutual, signed proofs of loss in the names of persons insured by Farmers Mutual, claims for losses which never occurred. Upon receipt of the settlement draft issued for the false claim, Bodtke forged the signature of the insured, cashed the check, and kept the proceeds.

Farmers Mutual became suspicious of approximately 60 claims submitted through Bodtke's agency for claimed losses in the latter part of 1981 and 1982. Of the suspect claims, 4 related to livestock loss through gunshot wounds, 34 for livestock killed by lightning, and 17 for property damage caused by wind.

Two representatives of Farmers Mutual met with Bodtke at his office in Hebron on January 25, 1983, to "confront him with the fraudulent claims." In that 1-hour meeting, Bodtke admitted submitting false claims. The Farmers Mutual representatives suggested that Bodtke come to the insurance company's home office in Lincoln, but Bodtke was unable to go to Lincoln on January 25. After unsuccessful attempts at scheduling, a meeting was held on February 4 in the library of Farmers Mutual's headquarters in Lincoln. Attending the meeting were Bodtke and three officials of Farmers Mutual—its president, a vice president, and the corporate general counsel. No law enforcement personnel attended or knew about the meeting. Although Bodtke's attorney was aware of the meeting at Farmers Mutual's office, Bodtke

appeared without counsel and acknowledged that his attorney did not object to any meeting to discuss and resolve the fraudulent claims. No one from Farmers Mutual called Bodtke's attorney, and the meeting proceeded.

None of the Farmers Mutual representatives informed Bodtke that he had a right to the presence of an attorney during the meeting or that he was not at liberty to leave the meeting at any time. In fact, Bodtke, for some undisclosed reason, left the meeting but returned and resumed discussing the claims questioned by Farmers Mutual.

In the course of the meeting, the general counsel for Farmers Mutual told Bodtke that the insurance company wanted "to resolve the matter of [Bodtke's] debt to the company," that Farmers Mutual was obligated "to report these matters [false claims] to the Department of Insurance," and that any possibility of criminal prosecution "would be up to the State." After Bodtke and the officers of Farmers Mutual sorted through a list of sundry suspect claims submitted through Bodtke's agency and paid by the insurance company, Bodtke identified the false claims which he had submitted. Bodtke and Farmers Mutual expressed a mutual desire to minimize notoriety which might ensue from civil litigation regarding the false claims. Farmers Mutual had prepared an "agreement" for Bodtke's signature. The agreement recited Bodtke's submitting "false claims" and Farmers Mutual's issuing checks for payment of $30,676.63 on the false claims, as well as contained a recital that Bodtke "forged the endorsement of the payees" on the checks and kept the proceeds "from the claim payments." Further, the agreement required Bodtke to "transfer ownership of the Farmers Mutual portion of [Bodtke's agency] to the company, to be sold," and also contained:

> Agent understands this agreement settles only his financial obligation to the company, and that the company is required by law to report the matter to the state. Agent further understands that the state alone will decide whether to file criminal charges against agent and take administrative action against his remaining agent's licenses.

Bodtke signed the agreement on February 4 in the office of

Farmers Mutual. Later, in Thayer County, Bodtke was charged with two counts of forgery, namely, falsely making a claim against Farmers Mutual in violation of § 28-602(1) and falsely endorsing or uttering a check issued by Farmers Mutual to an insured. See § 28-603(1). Pursuant to Neb. Rev. Stat. § 29-115 (Cum. Supp. 1984), Bodtke moved for pretrial suppression of his February 4 agreement with Farmers Mutual, claiming that the agreement was an involuntary confession and was obtained in violation of safeguards for custodial interrogation of a suspect as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The district court overruled Bodtke's motion. In his jury trial Bodtke did not testify and offered no evidence but, as apparent trial strategy, proceeded on the expectation that the jury would reject the February 4 "agreement" as involuntary and acquit Bodtke.

At conclusion of the evidence and during the conference on instructions, the court indicated its intention to give an instruction patterned on NJI 14.52, regarding voluntariness and the use of Bodtke's written "agreement" as evidence of guilt. Part of the court's proposed instruction contained:

> The state has introduced in evidence certain admissions or confessions claimed to have been made by the defendant.
>
> Before such admissions or confessions may be considered by you as evidence of defendant's guilt, you must find beyond a reasonable doubt that they were freely, voluntarily, and intelligently made by the defendant.
>
> . . . .
>
> To be voluntary an admission or confession does not have to proceed wholly or spontaneously at the suggestion of the defendant. The fact that it may have been elicited by questions propounded by persons who were interrogating the defendant will not, of itself, render it inadmissible.

The remainder of the court's proposed instruction was taken from NJI 14.52. Bodtke objected to the court's proposed instruction and requested that the omitted phrase, "in authority," as found in NJI 14.52, be added to the court's proposed instruction, namely, "questions propounded by persons *in authority* who were interrogating the defendant . . . ."

(Emphasis supplied.) Also, Bodtke requested a definitional instruction regarding "persons in authority." The court denied both requests by Bodtke and gave its instruction as indicated. The jury found Bodtke guilty on both counts of forgery, and the court sentenced Bodtke after a presentence report.

Bodtke claims two errors in the proceedings against him, namely: (1) Because representatives of Farmers Mutual did not give the warnings required by *Miranda*, the district court should have suppressed Bodtke's statement, the February 4 "agreement" given to insurance company representatives; and (2) In accordance with NJI 14.52, any instruction regarding voluntariness of Bodtke's statement should have included (a) the modifying phrase "persons in authority" in reference to Bodtke's interrogators and (b) a definition of the phrase "persons in authority."

Factfinding by a trial court on a motion to suppress will not be overturned on appeal unless clearly wrong. *State v. McCarthy*, 218 Neb. 246, 353 N.W.2d 14 (1984).

Although not critical for disposition of the issues presented in this appeal, there is a distinction between an admission and a confession. Bodtke uses the word *confession* to characterize his statement sought to be suppressed. In a confession an accused admits guilt of every material element of the crime charged against him, whereas in an admission an accused acknowledges some fact or circumstance in itself insufficient to constitute an acknowledgment of guilt but tending to prove the ultimate fact of guilt. See, *The People v. Georgev*, 38 Ill. 2d 165, 230 N.E.2d 851 (1967); 23 C.J.S. *Criminal Law* § 816 (1961). Bodtke's statement did not refer to any specific proof of loss or to any criminal intent "to deceive or harm" anyone by the transactions. Those omissions technically rendered Bodtke's statement an admission rather than a confession.

*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), formulated prerequisites for admissibility of a suspect's in-custody statement(s) obtained "in a police-dominated atmosphere, resulting in self-incriminating statements," *id.* at 445, and sought to minimize the psychological advantage frequently inherent in an exercise of governmental authority as a tool for coercion, that is, the

"potentiality for compulsion." *Id*. at 457. "Custodial interrogation" has been characterized by the U.S. Supreme Court in *Miranda* as "questioning instigated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id*. at 444.

In *Miranda* the U.S. Supreme Court also stated:

> The principles announced today deal with the protection which must be given to the privilege against self-incrimination when the individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way,

*id*. at 477, and "In announcing these principles, we are not unmindful of the burdens which law enforcement officials must bear," *id*. at 481.

In Bodtke's case there are dual reasons that the *Miranda* requirements do not apply to the statement obtained. First, there is no indication or intimation that any law enforcement agency was involved, directly or indirectly, in effecting meetings between Bodtke and Farmers Mutual or in producing Bodtke's statement. Clearly, the requirements and corresponding proscriptions of *Miranda* relate to governmental activity such as interrogation by law enforcement personnel. *Miranda* does not dictate rules governing the manner or efforts of private citizens enforcing their private property rights by private investigation or interrogation. See *Carnes v. State*, 115 Ga. App. 387, 154 S.E.2d 781 (1967). Representatives of Farmers Mutual were private citizens, not law enforcement personnel. Second, Bodtke was not in custody, that is, "deprived of his freedom of action in any significant way," when he made the statement sought to be suppressed. At the office of Farmers Mutual, Bodtke was at liberty to leave the meeting at any time and, unrestrained and unaccompanied, Bodtke actually left the meeting only to return and take up negotiations to determine and resolve his liability to Farmers Mutual. See *United States ex rel. Sanney v. Montanye*, 500 F.2d 411 (2d Cir. 1974). The district court correctly overruled Bodtke's motion to suppress on claims of involuntariness and failure to comply with

*Miranda* regarding custodial interrogation.

We next address the complaint about the instruction given on the question of voluntariness concerning Bodtke's statement. However, before examining the instruction tendered by Bodtke and that given by the court, a review of voluntariness and its relation to evidence in a criminal prosecution is beneficial.

*Miranda* has not relegated to oblivion all other case law on voluntariness. "Apparent compliance with the *Miranda* procedures does not automatically assure the voluntariness of a statement, any more than failure to adhere to *Miranda* automatically renders an admission involuntary." *United States v. Bernett*, 495 F.2d 943, 949 (D.C. Cir. 1974) (Robinson, Circuit Judge, dissenting).

As expressed by Justice Frankfurter in *Culombe v. Connecticut*, 367 U.S. 568, 602, 81 S. Ct. 1860, 6 L. Ed. 2d 1037 (1961):

> The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.

See, also, *United States v. Bernett, supra.*

If an accused lacks sufficient powers of reason and volition, the most meticulous explanation of constitutional rights will not make a statement voluntary. Is the act of admission or confession that of the maker or another? Use of an accused's involuntary statement, whether admission or confession, offends due process and fundamental fairness in a criminal prosecution, because one acting with coercion, duress, or improper inducement transports his volition to another who acts in response to external compulsion, not internal choice. With voluntariness as the ultimate test regarding an accused's statement, the focal point of inquiry into voluntariness is whether the statement is "the product of a rational intellect and a free will." *State v. Prim*, 201 Neb. 279, 281, 267 N.W.2d 193,

195 (1978); *State v. Russell*, 194 Neb. 64, 230 N.W.2d 196 (1975). Accord, *Blackburn v. Alabama*, 361 U.S. 199, 80 S. Ct. 274, 4 L. Ed. 2d 242 (1960); *Townsend v. Sain*, 372 U.S. 293, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963); *Mincey v. Arizona*, 437 U.S. 385, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978).

To afford due process on the question of voluntariness, Nebraska has adopted a procedure whereby voluntariness is first determined by the trial court as a matter of law and out of the presence of the jury. See Rule 104(c), Nebraska Evidence Rules (Neb. Rev. Stat. § 27-104(3) (Reissue 1979)): "Hearings on the admissibility of confessions shall in all cases be conducted out of the hearing of the jury. Hearings on other preliminary matters shall be so conducted when the interests of justice require . . . ." Cf. *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964) (judicial determination of voluntariness before submission to jury on that question).

If the court finds the statement is voluntary and, therefore, admissible, the question of voluntariness is submitted to the jury, which, by appropriate evidence, must be satisfied that the statement is voluntary. The very statutory vehicle for initial determination of voluntariness as a matter of law for a court also recognizes and preserves the question of voluntariness for ultimate disposition by the fact finder, that is, "None [of the statutory provisions for a motion to suppress a defendant's statement] shall affect the right of the defendant to present the question of . . . voluntariness . . . for the consideration of the fact finder at trial." § 29-115. See, NJI 14.52; *State v. Longmore*, 178 Neb. 509, 134 N.W.2d 66 (1965) (voluntary character of a statement or confession is a question of fact for the jury, notwithstanding a court's determination as a matter of law that the statement or confession is voluntary); *United States v. Smith*, 638 F.2d 131 (9th Cir. 1981) (once a defendant's statement or confession is received in evidence, the jury must hear all relevant evidence on the issue of voluntariness and shall be instructed to accord the statement or confession the appropriate weight warranted by the circumstances). See, also, *Commonwealth v. White*, 353 Mass. 409, 232 N.E.2d 335 (1967).

With background for the importance of voluntariness

regarding an accused's statement, the next question is whether an accused's statement to private citizens must be voluntary as determined by a court for admissibility and as a fact ascertained by the jury. This is the first that we have been asked to answer such question.

In our research it appears that every jurisdiction which has faced this question has logically concluded that, before a statement is admissible, an accused's statement must be voluntary, whether made to law enforcement personnel or private citizens. There are several illustrative cases.

*Schaumberg v. State*, 83 Nev. 372, 432 P.2d 500 (1967), involved a gambling casino employee's admission to his employer that the employee had "rigged" a slot machine so that the employee's brother-in-law hit the jackpot. The Supreme Court of Nevada stated:

> [W]e must nevertheless be concerned that the statements made by the defendant were voluntary and not the product of coercion. To be admissible as evidence, a confession (or admission) must be made freely, voluntarily and without compulsion or inducement, whether made to police officers or to private persons.

*Id.* at 374, 432 P.2d at 501-02.

A somewhat extreme situation was presented in *People v. Berve*, 51 Cal. 2d 286, 332 P.2d 97 (1958), concerning a statement actually and literally beaten out of a defendant. The defendant had performed an illegal abortion on a woman, who later died. To obtain a "confession" that the defendant had performed the criminal abortion, the victim's husband and other relatives of the victim kidnaped the defendant. While so confined, the defendant was "kicked and slugged with shoes," struck in the groin, and pushed through a window. The victim's husband pointed a loaded rifle at the defendant's head and suggested that the defendant "confess or die." The California Supreme Court held that the defendant's "confession" could not be admitted as evidence against the defendant, and stated: "No valid grounds for distinction are to be found in the fact that the coercion in this case was inflicted by civilians, and not the police. . . . The absence of volition condemns an enforced confession." *Id.* at 293, 332 P.2d at 101.

Although an employee admitted to his employer that the employee had stolen many of the employer's cattle, the Supreme Court of Mississippi held in *McElroy v. State*, 204 So. 2d 463, 465 (Miss. 1967): "[I]t is necessary to establish, in order that a confession . . . may become competent against the accused, that it was freely and voluntarily made and was not the result of coercion or induced by promises." See, also, *Berry v. State*, 153 Ind. App. 387, 393, 287 N.E.2d 557, 561 (1972) (a defendant's admissions to private citizens are admissible "so long as they are voluntarily made"); *In re Simmons*, 24 N.C. App. 28, 210 S.E.2d 84 (1974) (the voluntariness requirement applies to statements made to private individuals as well as to those made to law enforcement personnel); cf. *United States v. Rojas*, 458 F.2d 1355 (9th Cir. 1972) (in a bench trial a bank employee's damaging admission to a bank official regarding misapplication of bank funds was admissible, after the court determined that the statement was voluntary).

There is no alchemy to transform an accused's involuntary statement made to private citizens into valid evidence of guilt in a criminal prosecution. We hold as a general proposition: On questioned voluntariness, an accused's statement, whether an admission or a confession, made to private citizens, as well as to law enforcement personnel, must be voluntary as determined by a court for admissibility and as a fact ascertained by the jury. Such expression of law regarding voluntariness is based on our existing and oft-stated rule: To be admissible, a statement or confession must have been freely and voluntarily made. *State v. Crisp, ante* p. 265, 361 N.W.2d 544 (1985). See, also, *State v. Mayhew*, 216 Neb. 761, 346 N.W.2d 236 (1984); *State v. Rife*, 215 Neb. 132, 337 N.W.2d 724 (1983); *State v. Erks*, 214 Neb. 302, 333 N.W.2d 776 (1983); *State v. Hunsberger*, 211 Neb. 667, 319 N.W.2d 757 (1982).

Consequently, voluntariness in Bodtke's statement to the insurance company representatives was a proper preliminary question for the court as a matter of law and a factual question for the jury.

Bodtke's complaint about the court's instruction on voluntariness focuses on the absence of the phrase "persons in authority," a phrase otherwise used in NJI 14.52. Bodtke

contends omission of that phrase was prejudicial to him because the given instruction deprived the jury of a definition of "persons in authority." We have not been previously asked to define or characterize "persons in authority" in relation to voluntariness of an accused's statement, admission, or confession.

> A confession is not ipso facto involuntary merely because it was made to a person in authority. However, where an inducement has been extended to the accused, the strength of the inducement may turn upon the power of the person offering it. A relatively slight inducement held out by a person in authority may render a confession involuntary because the accused would have reason to believe that such a person is not only credible but also is in a position to give effect to the inducement.

C. Torcia, 3 Wharton's Criminal Evidence § 683 at 468-69 (13th ed. 1973).

> A "person in authority," within the meaning of the rule excluding confessions made under promise of immunity from prosecution or to mitigate the punishment, made by a person in authority, includes, among others, the sheriff, constable, and police or peace officers arresting the prisoner and having him in control and custody, a jailer, prosecuting or district attorneys and their agents and authorized investigators, the prosecuting witness or a person representing him, an examining magistrate or his clerk, and an interpreter.
>
> . . . .
>
> Where an employee is charged with an offense against the property of his employer, the latter is regarded as a person in authority within the rule that a confession induced by a promise of immunity from such person is inadmissible.

29 Am. Jur. 2d *Evidence* § 564 at 622-23 (1967).

We conclude and hold, generally, before one is a person in authority perhaps affecting voluntariness of an accused's statement or confession, the accused must reasonably believe that the person making a promise or inducement related to a statement or confession is one who has the capacity, directly or

indirectly, to produce a represented material result in the prosecution or disposition of a matter in the criminal justice system.

In this case statements by representatives of Farmers Mutual were directed toward determination and disposition of Bodtke's civil liability and potential litigation for restitution of the payments obtained through Bodtke's falsity and forgery. Although there was mention of possible state involvement, Farmers Mutual never represented it possessed any position or capacity to control criminal prosecution or administrative action against Bodtke. On the contrary, expressions by Farmers Mutual negated capacity to control any state action against Bodtke. Under the circumstances of this case, Bodtke could not reasonably conclude that representatives of Farmers Mutual were "persons in authority."

In the final analysis and due to the absence of the phrase "persons in authority," the tenor of the given instruction allowed the jury to consider possible involuntariness regarding Bodtke's statement made in response to interrogation by *any person*, not just "persons in authority." The instruction given reflects a correct statement of the law under the circumstances and was favorable and beneficial to Bodtke, thereby negativing Bodtke's claim of prejudice. See *State v. Hamilton*, 217 Neb. 734, 351 N.W.2d 63 (1984).

In all respects the judgment of the district court is correct and is affirmed.

AFFIRMED.